**EXHIBIT "C"**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| DAVID R. WILSON and CHARLENE WILSON, | ) ) ) |
| Plaintiffs, | ) ) Civil Action ) |
| v. | ) File No. 4:06-CV-179-HLM ) |
| TASER INTERNATIONAL, INC., | ) ) |
| Defendant. | ) |

## AFFIDAVIT OF DOUGLAS KLINT

1. My name is Douglas Klint. I am a Vice President and General Counsel of TASER International, Inc. I am over 18 years of age, of sound mind, have never been convicted of a felony or crime involving moral turpitude, and am otherwise fully capable of making this affidavit. All the statements herein are within my personal knowledge, are derived from records from TASER International, Inc. ("TASER") and my review thereof, and are all true and correct.

2. On December 23, 2004, TASER received a facsimile from the U.S. Securities and Exchange Commission ("SEC"), informing TASER that it was required to retain documents for an inquiry. (See Exhibit "A").

3. On December 30, 2004, TASER received a letter from the SEC providing a formal notice of inquiry regarding safety statements and a distributor

purchase order. (See Exhibit "B").

4. On May 11, 2006, TASER received a letter from the SEC notifying TASER that the inquiry had been terminated with a no enforcement action recommendation. (See letter to TASER c/o Jared Kopel, Esq., attached hereto as Exhibit "C").

Douglas Klint

SUBSCRIBED AND SWORN to before me on this 3rd day of August, 2007.



Notary Public, State of Arizona

SUSAN R. WHITE
Notary's Name Printed

My Commission Expires:

05/25/09

# EXHIBIT "A"



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SAN FRANCISCO DISTRICT OFFICE**
44 Montgomery Street
SUITE 2600
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: 415-293-0303
FAX NUMBER: 415-705-2501

December 23, 2004

By Facsimile and U.S. Mail

Douglas E. Klint, Esq.
Vice President & General
Counsel
Taser International, Inc.
7860 E. McClain Drive
Suite 2
Scottsdale, AZ 85260

Re:　In the Matter of Taser International, Inc, MSF-02909

Dear Mr. Klint:

This office is conducting an informal inquiry into Taser International, Inc. ("Taser") to determine whether there have been violations of the federal securities laws. In connection with this investigation, the staff requests that Taser take whatever steps are necessary to preserve documents relating to (1) the negotiation and implementation of all contracts between January 1, 2004 and the present; and (2) all documents relating to the safety of Taser's products, including documents relating to any studies, reports, or testing referred to in Taser's press releases between January 1, 2004 and the present. Specifically, the staff requests that Taser preserve the following:

- Organizational charts sufficient to identify the name, title, and office location of Taser's directors and officers, for the period January 1, 2004 to the present.

- All documents relating to policies and procedures in effect during 2004 relating to the use or possession of non-public information while trading in securities of Taser, including any insider trading policies, documents relating to blackout periods or trading windows, and documents relating to approval of any securities transactions.

- For the period January 1, 2004 through the present, all communications regarding any contracts contemplated and/or finalized which involved Taser's supply of its products to any U.S. government agencies or departments, including emails and other correspondence.

Taser
December 23, 2004
Page 2 of 3

- For the period January 1, 2004 through the present, all documents relating to any discussions, negotiations, or other contacts between Taser and any U.S. government agencies or departments.

- All documents relating to the June 30, 2004 public announcement regarding the $1.5 million contract with the U.S. military, including documents used in the preparation of the press release and all drafts of the press release.

- All documents relating to the November 8, 2004 public announcement regarding the U.S. Transportation Administration's approval of the use of Tasers on aircraft, including documents used in the preparation of the press release and all drafts of the press release.

- All documents for the period January 1, 2004 to the present relating to any public statements made by Taser or its officers and directors regarding the safety of Taser's products, including safety studies or reports, press releases, investor relations kits, and analyst conference call notes, question and answer ("Q&A") memoranda prepared in connection with analyst conference calls, and transcripts.

- All documents related to any agreements with distributors of Taser products for the period January 1, 2004 to the present.

- All documents relating to securities analyst reports on Taser issued during the period January 1, 2004 through the present.

- All documents relating to any actual or possible violation of Taser's insider trading policy during the period January 1, 2004 to the present.

- All address books, phone books, or other contact lists (including electronic files) maintained by or on behalf of any Taser director, officer, current or former employee, or agent who was aware of any contracts or negotiations with U.S. government agencies or departments prior to the public announcement of the contracts.

- All calendar books, appointment books, or other schedules (including electronic files) for the period from January 1, 2004 until the present maintained by or on behalf of any Taser director, officer, current or former employee, or agent who was aware of any contracts with U.S. government agencies or departments prior to the public announcement of the contracts.

This request applies to documents in any form, paper or electronic, within the possession, custody, or control of Taser or its agents or employees.

This investigation is confidential and should not be construed as an indication by the Commission or its staff that any violations of law have occurred, nor should it be considered a reflection upon any person, entity, or security. Enclosed for your review is SEC Form 1661,

Taser
December 23, 2004
Page 3 of 3

Supplemental Information for Regulated Entities Directed to Supply Information Other Than Pursuant to a Commission Subpoena.

If you have any questions, please do not hesitate to contact me at (415) 293-0303.

Very truly yours,

Susan Fleischmann
Staff Attorney, Enforcement Division

Enc. SEC Form 1661

# EXHIBIT "B"



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SAN FRANCISCO DISTRICT OFFICE
44 Montgomery Street
SUITE 2600
SAN FRANCISCO, CALIFORNIA 94104**

DIRECT DIAL: 415-293-0303
FAX NUMBER: 415-705-2501

December 30, 2004

**By Facsimile and U.S. Mail**

Douglas E. Klint, Esq.
Vice President & General
Counsel
Taser International, Inc.
7860 E. McClain Drive
Suite 2
Scottsdale, AZ 85260

Re:   **In the Matter of Taser International, Inc, MSF-02909**

Dear Mr. Klint:

As you are aware, the enforcement staff of the Securities and Exchange Commission ("Commission") is conducting an informal inquiry concerning the above matter to determine whether there have been violations of the federal securities laws. In connection with this investigation, the staff requests that, no later than January 14, 2005, **Taser International, Inc.** ("Taser") provide certain information. Specifically, please produce:

1. All documents for the period January 1, 2004 to the present relating to any public statements made by Taser or its officers and directors regarding the safety of Taser's products, including copies of all safety studies and reports mentioned in Taser's public statements.

2. All documents and communications regarding Taser's distribution agreement with Davidson, Inc.

We request that the documents produced be accompanied by a list briefly identifying each document or other material and the item or items of the request to which it relates. We also request that the pages of all documents be serially numbered (Bates stamped). Please indicate whether you have produced all documents called for by the present request and whether a diligent search has been made for documents not produced. We ask that if any document called for is not produced, for whatever reason, you list and indicate the location of such materials and the reason for non-production.

Taser
December 30, 2004
Page 2 of 2

    This inquiry is non-public and should not be construed as an indication by the Commission or its staff that any violation of law has occurred, nor should it be considered a reflection upon any person, entity or security.

    Thank you for your cooperation. If you have any questions regarding this matter, please call me at (415) 293-0303.

Very truly yours,

Susan Fleischmann
Staff Attorney, Enforcement Division

**EXHIBIT "C"**



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SAN FRANCISCO DISTRICT OFFICE
44 Montgomery Street
SUITE 2600
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: 415-705-2500
FAX NUMBER: 415-705-2501

May 11, 2006

**By Facsimile and U.S. Mail**

Taser International, Inc.
c/o Jared Kopel, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304

Re: **In the Matter of Taser International, Inc, SF-02909**

Dear Mr. Kopel:

This investigation has been terminated, and no enforcement action has been recommended to the Commission. We are providing this information under the guidelines in the final paragraph of Securities Act Release No. 5310, a copy of which is enclosed.

Very truly yours,

Michael S. Dicke
Assistant District Administrator
Office of Enforcement

Enclosure

PROCEDURES RELATING TO THE COMMENCEMENT OF ENFORCEMENT
PROCEEDINGS AND TERMINATION OF STAFF INVESTIGATIONS

SECURITIES ACT OF 1933, Release No. 5310; SECURITIES
EXCHANGE ACT OF 1934, Release No. 9796; INVESTMENT COMPANY
ACT OF 1940, Release No. 7390; INVESTMENT ADVISORS ACT OF
1940, Release No. 336

September 27, 1972

The Report of the Advisory Committee on Enforcement Policies and Practices, submitted to the Commission on June 1, 1972, contained several recommendations designed to afford persons under investigation by the Commission an opportunity to present their positions to the Commission prior to the authorization of an enforcement proceeding.[1] These procedural measures, if adopted, would in general require that a prospective defendant or respondent be given notice of the staff's charges and proposed enforcement recommendation and be accorded an opportunity to submit a written statement to the Commission which would accompany the staff recommendation. The objective of the recommended procedures is to place before the Commission prior to the authorization of an enforcement proceeding the contentions of both its staff and the adverse party concerning the facts and circumstances which form the basis for the staff recommendation.[2]

The Commission has given these recommendations careful consideration. While it agrees that the objective is sound, it has concluded that it would not be in the public interest to adopt formal rules for that purpose. Rather, it believes it necessary and proper that the objective be attained, where practicable, on a strictly informal basis in accordance with procedures which are now generally in effect.

The Commission desires not only to be informed of the findings made by its staff but also, where practicable and appropriate, to have before it the position of persons under investigation at the time it is asked to consider enforcement action.

---

[1] See Report of the Advisory Committee on Enforcement Policies and Practices, June 1, 1972, page 31 et seq.

[2] It should be noted that the obtaining of a written statement from a person under investigation is expressly authorized by Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934. Section 21(a) of the Exchange Act provides as follows:

> "The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated or is about to violate any provision of this title or any rule or regulation thereunder, and may require or permit any person to file with it a statement in writing, under oath or otherwise as the Commission shall determine, as to all the facts and circumstances concerning the matter to be investigated. . . ."

The Commission, however, is also conscious of its responsibility to protect the public interest. It cannot place itself in a position where, as a result of the establishment of formal procedural requirements, it would lose its ability to respond to violative activities in a timely fashion.

The Commission believes that the adoption of formal requirements could seriously limit the scope and timeliness of its possible action and inappropriately inject into actions it brings issues, irrelevant to the merits of such proceedings, with respect to whether or not the defendant or respondent had been afforded an opportunity to be heard prior to the institution of proceedings against him and the nature and extent of such opportunity.

The Commission is often called upon to act under circumstances which require immediate action if the interests of investors or the public interest are to be protected. For example, in one recent case involving the insolvency of a broker-dealer firm, the Commission was successful in obtaining a temporary injunctive decree within 4 hours after the staff had learned of the violative activities. In cases such as that referred to, where prompt action is necessary for the protection of investors, the establishment of fixed time periods, after a case is otherwise ready to be brought, within which proposed defendants or respondents could present their positions would result in delay contrary to the public interest.

The Commission, however, wishes to give public notice of a practice, which it has heretofore followed on request, of permitting persons involved in an investigation to present a statement to it setting forth their interests and position. But the Commission cannot delay taking action which it believes is required pending the receipt of such a submission, and, accordingly, it will be necessary, if the material is to be considered, that it be timely submitted. In determining what course of action to pursue, interested persons may find it helpful to discuss the matter with the staff members conducting the investigation. The staff, in its discretion, may advise prospective defendants or respondents of the general nature of its investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing a submission. The staff must, however, have discretion in this regard in order to protect the public interest and to avoid not only delay, but possible untoward consequences which would obstruct or delay necessary enforcement action.

Where a disagreement exists between the staff and a prospective respondent or defendant as to factual matters, it is likely that this can be resolved in an orderly manner only through litigation. Moreover, the Commission is not in a position to, in effect, adjudicate issues of fact before the proceeding has been commenced and the evidence placed in the record. In addition, where a proposed administrative proceeding is involved, the Commission wishes to avoid the possible danger of apparent prejudgment involved in considering conflicting contentions, especially as to factual matters, before the case comes to the Commission for decision. Consequently, submissions by prospective defendants or respondents will normally prove most useful in connection with questions of policy, and on occasion, questions of law, bearing upon the question of whether a proceeding should be initiated, together with considerations relevant to a particular prospective defendant or respondent which might not otherwise be brought clearly to the Commission's attention.

Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Administrator with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which it relates. In the event that a recommendation for enforcement action is presented to the Commission by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

It is hoped that this release will be useful in encouraging interested persons to make their views known to the Commission and in setting forth the procedures by which that objective can best be achieved.

The Advisory Committee also recommended that the Commission should adopt in the usual case the practice of notifying a person who is the subject of an investigation, and against whom no further action is contemplated, that the staff has concluded its investigation of the matters referred to in the investigative order and has determined that it will not recommend the commencement of an enforcement proceeding against him.[3]

We believe this is a desirable practice and are taking steps to implement it in certain respects. However, we do not believe that we can adopt a rule or procedure under which the Commission in each instance will inform parties when its investigation has been concluded. This is true because it is often difficult to determine whether an investigation has been concluded or merely suspended, and because an investigation believed to have been concluded may be reactivated as a result of unforeseen developments. Under such circumstances, advice that an investigation has been concluded could be misleading to interested persons.

The Commission is instructing its staff that in cases where such action appears appropriate, it may advise a person under inquiry that its formal investigation has been terminated. Such action on the part of the staff will be purely discretionary on its part for the reasons mentioned above. Even if such advice is given, however, it must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation of that particular matter. All that such a communication means is that the staff has completed its investigation and that at that time no enforcement action has been recommended to the Commission. The attempted use of such a communication as a purported defense in any action that might subsequently be brought against the party, either civilly or criminally, would be clearly inappropriate and improper since such a communication, at the most, can mean that, as of its date, the staff of the Commission does not regard enforcement action as called for based upon whatever information it then has. Moreover, this conclusion may be based upon various reasons, some of which, such as workload considerations, are clearly irrelevant to the merits of any subsequent action.

By the Commission.

---

[3] Report, page 20.