# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Rome

AUG 29 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

David R. Wilson and
Charlene Wilson,

      Plaintiffs,

v.

Taser International, Inc.,

      Defendant.

CIVIL ACTION FILE
NO. 4:06-CV-0179-HLM

## ORDER

This case is before the Court on Plaintiffs' <u>Daubert</u> Motion to Exclude Testimony of Defendant's Expert Witnesses [45].

## I.  Background

On July 9, 2007, Plaintiffs filed a <u>Daubert</u> Motion to Exclude Testimony of Defendant's Expert Witnesses.

(Docket Entry No. 45.) Plaintiffs seek an Order precluding all or part of the expert testimony proffered by the following witnesses: (1) Dr. Mark W. Kroll; (2) Mr. Greg Meyer; (3) Dr. John Peters; (4) Dr. Mark Lehto; (5) Mr. Steve Tuttle; (6) Mr. Patrick Smith; and (7) Mr. Rick Guilbault. Defendant has responded to the Motion, and the Court finds that the matter is ripe for resolution by the Court.

## II.  **Daubert Standard**

For approximately seventy years, federal courts faced with challenges to the admissibility of expert witness testimony spent a good deal of effort to determine whether the basis for the testimony was "sufficiently established to have gained general acceptance in the particular field in which it belongs." Frye v. United States, 293 F. 1013, 1014

2

(D.C. Cir. 1923); <u>United States v. Piccinonna</u>, 885 F.2d 1529, 1531-32 (11th Cir. 1989). In 1993, the Supreme Court belatedly recognized that the Federal Rules of Evidence had supplanted this standard of admissibility. <u>Daubert v. Merrill Dow Pharm., Inc.</u>, 509 U.S. 579, 587 (1993). Accordingly, the Federal Rules of Evidence serve as the cynosure for the task at hand.

Federal Rule of Evidence 702 speaks most directly to the admissibility of expert testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has

AO 72A
(Rev.8/82)

applied the principles and methods reasonably to the case.

Fed. R. Evid. 702. In accordance with Rule 702, the Court may admit expert testimony if: (1) the witness is "qualified as an expert," such that the witness can testify competently with regard to a matter at issue; (2) the testimony is reliable enough to be considered knowledge in the context of the relevant discipline; and (3) the testimony is relevant, in that it assists the trier of fact to understand or come to a conclusion regarding a material issue. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998).

To qualify to testify as an expert, a witness must be able to testify competently regarding the matters she intends to address by virtue of her education, training, experience, knowledge, or skill. See Fed. R. Evid. 702;

4

<u>Wheat v. Sofamor, S.N.C.</u>, 46 F. Supp. 2d 1351, 1356-57 (N.D. Ga. 1999); <u>Everett v. Georgia-Pac. Corp.</u>, 949 F. Supp. 856, 857 (S.D. Ga. 1996).

Before admitting the testimony of a witness qualified as an expert, however, the Court must engage in a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." <u>Daubert</u>, 509 U.S. at 592-93. The objective of this assessment "is to ensure the reliability and relevancy of expert testimony." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1999); <u>accord</u> <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1311-12 (11th Cir. 1999) ("The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in

5

the factual determinations, its potential to create confusion, and its lack of probative value."). The focus of the Court's preliminary assessment--the reliability and relevance of expert testimony--requires careful attention.

## A. Reliability

Federal Rule of Evidence 702, in conjunction with Rule 403 and Rule 703, imposes a standard of evidentiary reliability that contrasts with the generous approach to admissibility reflected in Rules 401 and 402. Allison, 184 F.3d at 1310; see also Kumho Tire Co., 526 U.S. at 149; Daubert, 509 U.S. at 589-91; cf. Weisgram v. Marley Co., 527 U.S. 440, 441-42 (2000) (noting that standards of reliability applied to expert testimony are "exacting"). Specifically, when expert "testimony's factual basis, data, principles, methods, or their application are called

6

sufficiently into question, . . . the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" Kumho Tire Co., 526 U.S. at 149 (quoting Daubert, 509 U.S. at 592). In other words, the Court's inquiry focuses not on whether the expert is correct, but whether the proponent of expert testimony has established by a preponderance of the evidence that the testimony is reliable in the context of the methodologies or techniques applied within the appropriate field. See Allison, 184 F.3d at 1312.

Several considerations may have a bearing on this issue. Whether a theory or technique has been tested, for example, or subjected to peer review and publication, may help to gauge the reliability of the methodology at issue. Daubert, 509 U.S. at 593. Similarly, the degree of

AO 72A
(Rev.8/82)

acceptance within the relevant community, the existence of standards designed to ensure the credibility or accuracy of a particular technique, the likelihood that a particular technique may result in error, and whether the methodology stands up to the standards applied within the relevant field all may help determine whether the methodology is sufficiently reliable to be considered admissible. City of Tuscaloosa, 158 F.3d at 566 n.25. Rule 702 also expressly requires that the expert's testimony be based upon sufficient facts or data, and that the expert have applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

In sum, the Court's objective is to make sure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert

8

in the relevant field." <u>Kumho Tire Co.</u>, 526 U.S. at 152. In keeping with the varied nature of expert testimony, the Court enjoys "considerable leeway in deciding in a particular case how to go about determining whether particular testimony is reliable." <u>Id.</u> The Court's evaluation of the reliability of expert testimony thus does not depend upon a rigid checklist of factors designed to test the foundation of that testimony. Rather, the gatekeeping inquiry must be tailored to the facts of the case and the type of expert testimony at issue. <u>See</u> <u>id.</u> at 150; <u>City of Tuscaloosa</u>, 158 F.3d at 566 n.25 (discussing reliability of testimony by economic and statistical experts).

## B. Relevance

The Federal Rules of Evidence also require that expert testimony, like all admissible testimony, relate to a pertinent

AO 72A
(Rev.8/82)

issue in the case. Indeed, Rule 702 provides that expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Even reliable expert testimony, therefore, may be excluded if no logical relationship exists between the testimony and a fact or issue in the case. Daubert, 509 U.S. at 591; Allison, 184 F.3d at 1312.

## III. Discussion

### A. Dr. Mark W. Kroll

Plaintiffs seek an Order precluding Defendant from introducing testimony from Dr. Mark W. Kroll. Plaintiffs argue that Dr. Kroll's report simply is generic in nature, does not address the specifics of Plaintiff David Wilson's injury, and fails to address whether the TASER device may cause

AO 72A
(Rev.8/82)

spinal fractures. Consequently, Plaintiffs contend that Dr. Kroll's report fails to assist the jury in determining the facts at issue in this case.

The Court has reviewed Dr. Kroll's expert report and his supporting documentation. The Court cannot find, based on Plaintiffs' arguments, that Dr. Kroll's anticipated testimony will not be relevant to any issue in this case and will not assist the jury. The Court therefore will not enter an Order excluding Dr. Kroll's testimony at this point.

## B. Mr. Greg Meyer

Plaintiffs also have moved to exclude the expert testimony of Mr. Greg Meyer. According to Plaintiffs, Mr. Meyer's opinions, for the most part, simply are based on his observations from viewing the video of Plaintiff David Wilson's exposure to the TASER, and, consequently,

11

consist of testimony that is within the common knowledge of jurors. Plaintiffs contend that Mr. Meyer's remaining opinions are irrelevant to the issues presented by this case.

In response, Defendant argues that the jury in this case must determine whether Defendant had a duty to warn Plaintiff David Wilson, a twenty-year veteran of the Georgia State Patrol, of the risks associated with TASER exposure during mandated use-of-force training. According to Defendant, one factor that is key to that determination is whether law enforcement professionals such as Plaintiff David Wilson know, or objectively should know, that use-of-force training involves risks that cannot be completely eliminated, even after taking reasonable precautions. Defendant asserts that the adequacy of the warning at issue is not a matter within an average juror's common sense and

12

everyday knowledge, because the average juror would never participate in training for the use of a law enforcement tool such as the TASER.

The Court has reviewed Mr. Meyer's expert report and supporting documentation. The Court cannot find at this point that Mr. Meyer simply seeks to offer testimony that is within jurors' common knowledge. The Court also cannot conclude at this point that Mr. Meyer's opinions are irrelevant to the issues presented by this case. The Court therefore denies this portion of Plaintiffs' <u>Daubert</u> Motion.

## C. Dr. John Peters

Plaintiffs seek to exclude the testimony of Dr. John Peters. According to Plaintiffs, Dr. Peters proposes to testify that: (1) Defendant's instruction plans reveal that the training resources provided by Defendant were not deficient;

13

(2) the State of Georgia is a sophisticated use-of-force user and is a learned intermediary; (3) Defendant provided reasonable and sufficient warnings about its products to purchasers and users; (4) Defendant does not set policy for agencies concerning TASER training and policies and procedures; (5) Defendant had only a limited relationship with Plaintiff David Wilson, as Plaintiff David Wilson was neither a purchaser nor an end user of its product; (6) Defendant had no notice of training injuries such as those alleged by Plaintiff David Wilson; (7) Defendant had no control over the actions of Georgia State Patrol instructors, and no representative of Defendant was present at the training center; (8) no cause and effect research study supports a finding that TASER devices are a proximate cause of injuries similar to Plaintiff David Wilson's; and (9)

14

AO 72A
(Rev.8/82)

before September 7, 2004, no data suggested that voluntary exposure to a TASER device could lead to an injury such as that suffered by Plaintiff David Wilson. Plaintiffs contend that those conclusions provide no support or assistance to the task before the jury, and are based on no methodology whatsoever.

Defendant contends that Dr. Peters has expertise in designing, implementing, and evaluating law enforcement use-of-force training programs, including programs for electronic control devices, expertise in writing warnings, and experience as a training advisor for a number of law enforcement agencies to offer testimony concerning the training program recommended by Defendant and the warnings and instructions contained in that program. Defendant also argues that Dr. Peters' work with

15

manufacturers of use-of-force equipment and his work with law enforcement agencies gives him sufficient knowledge and experience to provide testimony about the role a product manufacturer such as Defendant plays with respect to a law enforcement agency's training decisions, as well as about law enforcement agencies' general levels of expertise concerning use-of-force options. Defendant further contends that Dr. Peters is qualified to testify concerning injuries allegedly caused by TASER devices during training, as Dr. Peters has been exposed to a TASER device and to other electronic control devices, and as Dr. Peters has conducted his own statistical analysis of injuries claimed to be caused by voluntary exposure to TASER devices. Finally, Defendant argues that Dr. Peters is qualified to testify about the proper and necessary analysis for

16

determining issues of causation, as Dr. Peters is extremely familiar with the scientific method and the manner in which scientific research is conducted, and has conducted several research studies.

The Court has reviewed Dr. Peters' report, and concludes that many of Dr. Peters' opinions consist of legal conclusions. Although Dr. Peters may testify at trial as to the information underlying his opinions that the training program developed by Defendant was adequate, that the Georgia State Patrol is highly familiar with use-of-force training and equipment, and may testify about the warnings provided by Defendant, he may not offer legal conclusions. In particular, he may not testify that the State of Georgia and the Georgia State Patrol are learned intermediaries, that Defendant had no further duty to warn Plaintiff David

17

Wilson, that Defendant's warnings were adequate to satisfy any duty to warn, and that Defendant's product did not cause Plaintiff David Wilson's injury.

Further, although Dr. Peters may be familiar with the scientific method and with conducting scientific research, Defendant has not shown that Dr. Peters is qualified to testify as to orthopedics or medical causation. Consequently, Dr. Peters may not offer testimony concerning whether the TASER exposure caused Plaintiff David Wilson's injury.

## D. Dr. Mark Lehto

Plaintiffs also seek to exclude the testimony of Dr. Mark Lehto, who proposes to offer expert testimony concerning the adequacy of the warnings provided in Defendant's training materials. Plaintiffs complain that Dr. Lehto's expert

18

report fails to discuss the methodology he used to reach his conclusion that Defendant's warnings were adequate, and that Dr. Lehto's report fails to explain how Defendant's warnings would have been adequate to warn Plaintiff David Wilson that his exposure could cause a fracture. Plaintiffs therefore contend that Dr. Lehto's opinion will not assist the jury in resolving the issues presented by this case.

In response, Defendant notes that Dr. Lehto is a professor of industrial engineering with a Ph.D. in Industrial Operations and Engineering, and that Dr. Lehto has devoted much of his professional life to the topic of product warnings. Defendant argues that Dr. Lehto's expert report indeed discloses his methodology, and that Plaintiffs' other objections are without merit.

AO 72A
(Rev.8/82)

The Court has reviewed Dr. Lehto's expert report, and cannot find at this point that Dr. Lehto is not qualified to offer the opinions he intends to express. The Court also cannot find at this point that Dr. Lehto has failed to disclose his methodology, that his testimony will not assist the jury to resolve the pertinent issues in this case, or that his testimony otherwise should be excluded. The Court therefore denies this portion of Plaintiffs' <u>Daubert</u> Motion.

### E.   Steve Tuttle

Plaintiffs also seek to exclude the expert opinion of Steve Tuttle, Defendant's Vice President of Communication, in which Mr. Tuttle opines that TASER devices have resulted in fewer injuries to officers and suspects when used in the field. Plaintiffs argue that Mr. Tuttle's opinions have no relevance to the issue of the adequacy of the warning

20

provided to Plaintiff David Wilson at the time of his injury.

Defendant contends that Mr. Tuttle has compiled a field use database that includes over 12,000 reported incidents of TASER deployments, and that Mr. Tuttle's "intimate knowledge of TASER's use databases makes him uniquely qualified to provide expert testimony regarding reports of injuries allegedly caused by TASER devices." (Def.'s Resp. Pls.' Daubert Mot. at 17.) Defendant contends that Mr. Tuttle's expert testimony is relevant to show Defendant's alleged knowledge of injuries similar to the injury that Plaintiff David Wilson contends he suffered, and that it also will assist the jury in assessing the adequacy of Defendant's published warnings by explaining how those warnings correspond to the information gathered from various field reports.

21

The Court has reviewed Mr. Tuttle's report and the testimony that Mr. Tuttle intends to offer at trial. Much of the testimony that Mr. Tuttle purports to offer is fact testimony, rather than expert testimony. Although Mr. Tuttle certainly may testify at trial concerning the fact that Defendant has compiled a field use database including over 12,000 reported incidents of TASER deployments, the reports of alleged TASER injuries are not properly the subject of expert testimony.

In sum, the Court will permit Mr. Tuttle to testify at trial as a fact witness concerning Defendant's compilation of a field use database. Mr. Tuttle, however, may not testify as an expert witness concerning those matters. The Court therefore grants the <u>Daubert</u> Motion with respect to Mr. Tuttle's expert testimony.

22

## F. Patrick W. Smith

Plaintiffs also seek to exclude the expert opinion of Patrick W. Smith, who proffers opinions concerning scientific principles of electricity, effects of electricity on the human body, mechanics and engineering behind the TASER devices, and the safety of the device. Plaintiffs argue that Mr. Smith has no formal training in any of the areas in which he seeks to proffer expert testimony, and that he is not qualified to testify.

Defendant argues that Mr. Smith is qualified to offer the testimony at issue because he led the development team for the TASER M26 device, and designed the test methodology used to develop the device. Defendant notes that Mr. Smith is the sole listed inventor of the electrical waveform of the TASER M26 device, and that he also holds two other

23

TASER device patents. Defendant points out that Mr. Smith has a bachelor's degree in biology, and that his coursework focused on neurobiology. Defendant argues that Mr. Smith "is intimately knowledgeable of TASER devices, including the electrical and neurobiological principles associated with these devices," and that he therefore is "uniquely positioned to provide reliable expert testimony regarding these devices and the science related to their operation and effect on the human body." (Def.'s Resp. Pls.' Daubert Mot. at 19.) Defendant contends that Defendant's TASER devices are unfamiliar to the average juror, and that Mr. Smith's testimony will assist the jury in understanding how the devices work, thereby allowing the jury to evaluate Plaintiffs' claims that the TASER device caused Plaintiff David Wilson's injury. (Id.)

24

AO 72A
(Rev. 8/82)

The Court has reviewed Mr. Smith's report and the testimony that Mr. Smith plans to offer. For the following reasons, the Court finds that Mr. Smith may not serve as an expert witness for Defendant at trial. Mr. Smith certainly may offer factual testimony concerning how the TASER was developed, how it works, and why Defendant developed the TASER; however, Defendant has not shown why the Court should permit Mr. Smith to offer those opinions as an expert witness, rather than as a fact witness. Defendant also has not shown that Mr. Smith is qualified to offer expert opinions concerning scientific principles of electricity, effects of electricity on the human body, the mechanics and engineering behind the TASER devices, and the safety of the device. The Court therefore will not permit Mr. Smith to offer expert testimony concerning those matters at trial.

25

In sum, the Court will permit Mr. Smith to testify at trial as a fact witness concerning the development of the TASER and the manner in which the TASER works. Mr. Smith, however, may not testify as an expert witness concerning those matters. Further, Mr. Smith may not offer expert testimony concerning scientific principles of electricity, effects of electricity on the human body, the mechanics and engineering behind the TASER devices, and the safety of the device. The Court therefore grants the Daubert Motion with respect to Mr. Smith's expert testimony.

## G. Mr. Rick Guilbault

Finally, Plaintiffs have moved to exclude the expert testimony of Mr. Rick Guilbault, Defendant's vice president of training. Plaintiffs observe that Mr. Guilbault's expert report simply provides a basic summary of Defendant's

AO 72A
(Rev.8/82)

training program, and fails to mention either Plaintiff David Wilson or his case. Plaintiffs note that they do not object to Mr. Guilbault testifying as a fact witness, but argue that Mr. Guilbault's testimony "should not be cloaked with the authority of an 'expert.'" (Pls.' Br. Supp. <u>Daubert</u> Mot. at 16.)

Defendant, in turn, asserts that Mr. Guilbault is qualified to provide expert testimony regarding Defendant's training program itself, as well as law enforcement use of force training in general, including testimony about "the role that [Defendant] plays with respect to local law enforcement training such as the training conducted by the Georgia State Patrol, [Defendant's] suggested training materials and the information and warnings contained therein, and a comparison of [Defendant's] training program to other use

27

of force training available to law enforcement." (Def.'s Resp. Pls.' <u>Daubert</u> Mot. at 20.) Defendant contends that Mr. Guilbault is qualified to offer the expert testimony at issue, and that his testimony will assist the jury in understanding the rationale behind Defendant's training program, as well as in comparing Defendant's training program with other law enforcement training programs. According to Defendant, Mr. Guilbault's testimony will put the jury "in a better position to evaluate other key issues in this case, including the adequacy of [Defendant's] product warnings." (<u>Id.</u> at 21.)

The Court has reviewed Mr. Guilbault's expert report and the testimony that Mr. Guilbault plans to offer. Mr. Guilbault may testify as a fact witness concerning Defendant's training program. To the extent that Mr.

AO 72A
(Rev.8/82)

Guilbault is familiar with other law enforcement training programs, he also may testify as a fact witness about those programs. Mr. Guilbault, however, may not testify as an expert witness concerning those matters. For those reasons, the Court grants Plaintiffs' <u>Daubert</u> Motion as to Mr. Guilbault.

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' <u>Daubert</u> Motion to Exclude Testimony of Defendant's Expert Witnesses [45]. The Court **GRANTS** the Motion with respect to the following expert witnesses: (1) Dr. John Peters; (2) Mr. Steve Tuttle; (3) Mr. Patrick Smith; and (4) Mr. Rick Guilbault. Those witnesses may testify at trial only as discussed in the body of this

29

Order.  The Court **DENIES** the Motion with respect to the following witnesses: (1) Dr. Mark W. Kroll; (2) Mr. Greg Meyer; and (3) Dr. Mark Lehto.

IT IS SO ORDERED, this the 29th day of August, 2007.

_____
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)