IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| **DAVID R. WILSON and** | : | |
| **CHARLENE WILSON,** | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| V. | : | FILE NO. 4:06-CV-179-HLM |
| | : | |
| **TASER INTERNATIONAL, INC.,** | : | |
| | : | |
| Defendant. | : | |

_____

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STRIKE AFFIDAVIT OF PAM SCHREINER

Come now Plaintiffs, **DAVID R. WILSON and CHARLENE WILSON**, and file this Response to Defendant's Motion to Strike Affidavit of Pam Schreiner, showing to the Court the following:

### I. INTRODUCTION

On July 27, 2007, Plaintiffs responded to the Defendant's Motion for Summary Judgment, attaching the affidavit of Pamela Schreiner. In her affidavit, Schreiner states that one of the first duties assigned to her as an Executive Assistant was to organize a huge number of volunteer exposure reports (also known as "demo reports") scattered throughout TASER's offices. [Schreiner Aff., ¶3]. Volunteer exposure reports are documents filled out by officers exposed to

"hits" from Defendant's product during training, and provide an opportunity for the officer to disclose any injury from the exposure. [Exh. Q to Plaintiff's Summary Judgment Response]. Schreiner created a spreadsheet from the information contained in the volunteer exposure reports, tabbing documents which indicated injuries from the TASER exposure. [Schreiner Aff., ¶4]. While preparing the spreadsheet, Schreiner noticed that there were "hundreds, if not thousands" of injuries noted on the reports. [Schreiner Aff, ¶5]. Schreiner further states that when Doug Klint, corporate counsel, and Rick Smith, CEO, became aware of the extent of injuries, they "told me to remove the data from the spreadsheets for most of the injuries which I had entered. They then shredded most of the reports showing injuries, bringing in dumpsters to dispose of the paper." Schreiner further noted that many of the destroyed documents contained reports of back injuries. [Schreiner Aff., ¶5]. Schreiner was never revealed as a potential witness by TASER International in this case.

On May 25, 2005, Schreiner's deposition was taken in the <u>Powers v. TASER International, Inc.</u> case, then pending in the Superior Court of Maricopa County, Arizona, Civil Action File No. CV2003-013457. Schreiner's deposition was taken by the plaintiff and defended by TASER's counsel, Christina J. Reid-Moore. Schreiner waived reading and signing the deposition. [Schreiner depo., p. 113].

Schreiner's deposition was taken shortly after having been fired during an S.E.C. investigation of the product's safety, and after she had been verbally threatened and kept under surveillance by TASER, and had a window shot out of her residence. [Schreiner Aff., ¶7].

TASER International's counsel lodged no fewer than seventy (70) objections during Schreiner's two hour deposition. (Exh. A to Defendant's Brief]. Schreiner was allowed to answer, over numerous objections, questions related to a spreadsheet created by Jami Hill (LaChapelle), another TASER employee, from information contained in some of the volunteer exposure reports. However, contrary to TASER International's assertions in their Brief, Schreiner did not answer questions about the spreadsheet *she* created. [Schreiner depo., pp. 54-55; 70-72; 82, 83]. Schreiner was not allowed to testify about the spreadsheet created by her at Doug Klint's direction because she was <u>specifically</u> <u>directed</u> by TASER's counsel not to. Schreiner created her own spreadsheet because the one created by Jami Hill (LaChapelle) was incomplete. [Schreiner depo., pp. 91, 92]. Schreiner's spreadsheet included information on officer injuries, whereas Hill's did not. Schreiner further testified in her deposition that demo reports were destroyed. [Schreiner depo., pp. 92-93].

In their Brief, TASER International repeatedly cites from the portions of Schreiner's deposition wherein she testifies about the spreadsheet created by Jami Hill (LaChapelle), intending to confuse and mislead the Court about which spreadsheet Schreiner is testifying about. TASER International further implies that Schreiner's deposition testimony concerning shredding of documents contradicts her affidavit. That is not true. In her affidavit, Schreiner states "*they* then shredded most of the reports showing injuries, bringing in dumpsters to dispose of the paper." [Schreiner Aff., ¶5]. In her deposition, Schreiner was asked:

> Q. Did *you* at any time while you were at Taser ever shred any documents?
>
> A. No, sir. [Schreiner depo., pp. 79:24-80:1].

Schreiner was never asked whether <u>anyone</u> <u>else</u> had done any shredding.

Having been fired, verbally threatened, harassed, intimidated, watched, and told by TASER that "it would not be a good idea for [her] to be testifying against TASER" [Schreiner Aff., ¶7], and having been instructed repeatedly by TASER's counsel not to answer questions about the work that she did for TASER, it is hardly fair for TASER to now complain that Schreiner did not "tell all" in her deposition in the <u>Powers</u> case. In her affidavit, Schreiner stated, "since leaving TASER International, I have lived in fear of what TASER International will do to me. The company has enormous resources and connections throughout law

4

enforcement." [Schreiner Aff., ¶8]. Schreiner's affidavit does not contradict her deposition testimony, and any minor inconsistencies may be fodder for cross-examination by TASER, but they do not disqualify her from testifying. Therefore, TASER's motion should be denied.

## II. STANDARD FOR DISREGARDING A SHAM AFFIDAVIT

The Eleventh Circuit has repeatedly held that a distinction must be made between discrepancies which create transparent shams, and discrepancies which create an issue of credibility or go to the weight of the evidence. Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986).

> The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended. To allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth. Variations in a witness' testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact. An affidavit may only be disregarded as a sham when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . and that party attempts thereafter to create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. Id. at 953, 954, *citing* Van T. Junkins & Assoc. v. U.S. Industries, 736 F.2d 656, 657 (11th Cir. 1984).

5

The Eleventh Circuit has been particularly resistant to striking affidavits where given by a <u>disinterested</u> <u>witness</u>. For example, in <u>Lane v. Celotex Corp.</u>, 782 F.2d 1526 (11th Cir. 1986), the Eleventh Circuit reversed an award of summary judgment to the manufacturer in an asbestos exposure suit because the district court improperly excluded an affidavit executed by the appellant's co-worker. The Court in <u>Lane</u> noted, "here there is little chance of sham factual issues. Ring (the co-worker) is a disinterested witness and it is our view that any inconsistency in his testimony is more likely the result of his faulty memory than a predisposition to lie. Thus, while a district court may find that a *party's* contradictory affidavit constitutes a sham, e.g., <u>Van T. Junkins</u>, 736 F.2d at 656, we would be unable, absent great trepidation, to affirm a similar finding with respect to a disinterested *witness'* contradictory affidavit." <u>Id</u>. at 1531.

In <u>Advanced Telemedia, LLC v. Charter Communications, Inc.</u>, 2006 U.S. Dist. LEXIS 85876 (N.D. Ga. 2006), the court refused to strike the defendant's witness' affidavit, noting that the Eleventh Circuit's caution against application of the sham affidavit rule because of the harsh affects it can have on a party's case. Citing <u>Lane v. Celotex Corp.</u>, *supra*, the court stated, "in light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition."

Advanced Telemedia, LLC, 2006 U.S. Dist. LEXIS 85876 (N.D. Ga. 2006). *See, also* Nicolatos v. Sprint/United Management Co., 2006 U.S. Dist. LEXIS 87183 (N.D. Ga. 2006); Israel v. Sonic-Montgomery FLM, Inc., 231 F.Supp.2d 1156 (M.D. Ala. 2002); Kibbee v. City of Portland, 1999 U.S. Dist. LEXIS 19950 (D. Or. 1999).

### III.  STATEMENT OF THE FACTS

In its Brief, TASER International repeatedly states that Schreiner prepared a spreadsheet of the available volunteer demo reports containing information on officer injuries in trainings, and provided that information to plaintiff's counsel in the Powers litigation. [Defendant's Brief, p. 2, 3, 9, 10, 15, 16, 24]. Either TASER International is extremely confused, or worse, is intentionally trying to deceive this Court. The spreadsheet prepared by Schreiner in the Powers case was never produced in discovery in that case [*See,* Affidavit of Tom Wilmer, attached hereto as Exhibit "A"]. It has also never been produced in this case.

Schreiner testified that when she was hired by TASER International, the company's documents were in complete disarray. [Schreiner depo., pp. 29-38]. Schreiner was told by Mr. Klint to talk to Jami Hill (LaChapelle) about a spreadsheet in Excel that Ms. Hill had created from the demo reports. [Schreiner

depo., pp. 52, 53]. Schreiner did not alter the spreadsheet created by Jami Hill (LaChapelle). [Schreiner depo., pp. 54, 55]. Schreiner was then asked:

> Q. Did you enter it into a different spreadsheet that had similar information?
>
> A. Yes.
>
> Q. Okay. Where did you get that second spreadsheet that had different information?
>
> MS. REID-MOORE: I'm going to object. That is, correct if I'm wrong, in reference to the spreadsheet that we reference in our twenty-ninth supplemental disclosure statement.
> So to the extent that you get into why it was created and how it was directed to be created by Doug Klint, I'm going to have to instruct her not to answer if we get to that point. [Schreiner depo., p. 55:5-12].

Schreiner then went on to testify about the spreadsheet created by Jami Hill (LaChapelle) which was produced by TASER International in the Powers case in two different productions. [Schreiner depo., pp. 64-70]. Schreiner was then asked:

> Q. You said that at a later date you did in fact generate an entire new spreadsheet from scratch; is that right?
>
> A. Yes, that is correct.
>
> Q. And you did that at Doug Klint's direction, right?
>
> A. Yes.
>
> Q. Okay. Why did you do that?
>
> A. We were actually trying to have more formality, I guess, in, you know, keeping these files straight. And because there were so many

8

files everywhere, the reports were just scattered throughout the company that I -- you know, we needed to do something to get some sort of a system in place and to make it more uniform.

Q. So what you had to do, if I understand your testimony correctly, you had to try to find the individual demo reports from wherever you could find them, and then you got them organized the way you thought they should be organized, and then you started from scratch an entire new spreadsheet in the form that is before you that we were just talking about; is that correct?

MS. REID-MOORE: Object to form, foundation.

Q. BY MR. DILLINGHAM: Go ahead.

A. Okay. Yes and no.

Q. Okay. Go ahead and explain.

A. It was a totally different format than this.

. . .

Q. Okay. What was different about the format?

MS. REID-MOORE: I'm going to object if you start getting into the content of it. That's the spreadsheet that we've labeled as attorney work product.

MR. DILLINGHAM: You've produced it.

MS. REID-MOORE: No, no, we have not. We produced a supplemental disclosure saying that she was directed to create a spreadsheet for this case. And it's --

MR. DILLINGHAM: All I want to talk to her about is the ones that have been produced in this case.

9

> MS. REID-MOORE: Okay.
>
> MR. DILLINGHAM: Okay. And --
>
> MS. REID-MOORE: That's not -- that is not what -- I don't believe that's what she's talking about.
>
> Q. BY MR. DILLINGHAM. Well, that's what I'm trying to find out. The document that you generated from scratch --
>
> A. Uh-huh.
>
> Q. -- did you at any time ever make a copy of that, put it on a CD, and then produce it to Renaud Cook in this case?
>
> A. Yes, but it was -- **it was for work product**. [Schreiner depo., pp. 69-72] [emphasis added]

The spreadsheet created by Jami Hill (LaChapelle); the spreadsheet that contained no information concerning officer injuries [LaChapelle depo., pp. 23-25] was not produced by the Defendant in the <u>Powers</u> case until November 19, 2004. [Schreiner depo., p. 74]. The Schreiner spreadsheet, on the other hand, was never produced. [Schreiner depo., pp. 71-72, 82-83; Wilmer Affidavit (Exh. A)]. When Schreiner was asked about the spreadsheet that she created, TASER's attorney objected and instructed her not to answer. [Schreiner depo., pp. 82-83].

## IV. SCHREINER'S AFFIDAVIT DOES NOT CONTRADICT HER DEPOSITION TESTIMONY

TASER's argument that Schreiner's affidavit is a "sham" and should be disregarded rests almost entirely on TASER's false assertion that Schreiner's entire

deposition testimony concerned the spreadsheet created by her and presumably produced to Powers' counsel. Having now shown the falsity of that presumption, it becomes clear that there is nothing contradictory about Schreiner's deposition.

For example, Schreiner testifies in her deposition that after locating and producing the Hill spreadsheet, she located additional demo report forms in the accounting warehouse, the shipping and receiving warehouse, the engineering warehouse, and in a loft area above the production part of the plant. [Schreiner depo., pp. 74-76]. The demo reports were unorganized and distributed throughout the offices. [Schreiner depo., pp. 74-76]. This portion of Schreiner's deposition is consistent with paragraph 3 of Schreiner's affidavit.

When Schreiner was asked about the injuries reflected on demo reports, she responded that she could not be specific in terms of the percentage of total forms that had "yes" for injuries as opposed to "no." [Schreiner depo., p. 109]. Schreiner stated that it would be hard (to assign a percentage) because there was "a handful of everything." What is unclear from Schreiner's deposition testimony is exactly what she meant by "a handful." TASER would have the Court believe that a handful could only be a small number. First of all, Schreiner could have been referring, as she had throughout her testimony, to the spreadsheet created by Hill, as opposed to the spreadsheet created by her. Second, what Schreiner could very

11

well have meant by "a handful" could become a great number of injuries if she was referring to different types of injuries. What is clear from both her deposition and her affidavit is that she was, and is now, unable to give a definite number of the injuries reflected in the demo reports, except that there were many of them. [Schreiner Aff., ¶5]. Any inconsistency between her affidavit and her unclear deposition testimony is more properly left for exploration through cross-examination at trial.

The cases cited by TASER International in its Brief are distinguishable in two respects. First of all, nearly all of the cases involve an affidavit by *the plaintiff* which is alleged to be inconsistent with *the plaintiff's* deposition testimony. Here, however we have a disinterested witness, not the plaintiff in the case. The Eleventh Circuit has historically been reluctant to disregard a disinterested witness' contradictory affidavit. *See*, Lane v. Celotex Corp., *supra* at 1531.

Secondly, in the cases cited by TASER, the affidavit urged as a sham was clearly contradictory to previous deposition testimony, and filed for the obvious purpose of avoiding summary judgment. For example, in Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc., 736 F.2d 656 (11th Cir. 1984), the president of Van T. Junkins "made crystal clear in three places in the deposition" that there was no condition attached to the parties' agreement that he was required to purchase

one of their buildings in order to be awarded a dealership. Id. at 657.  He later submitted an affidavit in flat contradiction to the earlier deposition, stating that he would be awarded the dealership only if he would purchase one of their buildings. The Eleventh Circuit held that the affidavit was properly disregarded as completely contradicting his earlier deposition testimony.

Finally, none of the cases cited by TASER in its Brief involve the unique situation presented here: where a former employee testifying under cross-examination, after having been threatened and harassed, is then specifically instructed three different times not to answer questions about her work.  Unlike the parties in the cases cited by TASER, it can hardly be said that Schreiner was given free rein in her deposition to disclose any pertinent information.

For all of these reasons, TASER International's motion to strike Ms. Schreiner's testimony should be denied.

Respectfully submitted this 4th day of September, 2007

                        JOHNSON LAW, P.C.

                        **s/ Cynthia Noles Johnson, Esq.**

313 Wolfe Street           GA State Bar No. 545615
P. O. Box 48               Attorney for Plaintiffs
Cohutta, GA  30710
(706) 694-4298
E-mail: cindy@johnsonlawpc.com

# CERTIFICATE OF COMPLIANCE

The undersigned counsel for Plaintiffs hereby certifies that the foregoing Brief has been prepared using Times New Roman 14 point.

                                                JOHNSON LAW, P.C.

                                                **s/ Cynthia Noles Johnson, Esq.**

| | |
|---|---|
| 313 Wolfe Street | GA State Bar No. 545615 |
| P. O. Box 48 | Attorney for Plaintiffs |
| Cohutta, GA  30710 | |
| (706) 694-4298 | |
| E-mail: cindy@johnsonlawpc.com | |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2007, I electronically filed **Plaintiffs' Response to Defendant's Motion to Strike Affidavit of Pam Schreiner** with the Clerk of Court using the CM/ECF System which will automatically send e-mail notification of such filing to the following attorneys of record:

>Joel G. Pieper, Esq.
>Jessie C. Fontenot, Jr., Esq.
>Womble, Carlyle, Sandridge & Rice, PLLC
>One Atlantic Center, Suite 3500
>1201 West Peachtree Street
>Atlanta, GA  30309
>
>Holly L. Gibeaut
>TASER International, Inc.
>17800 North 85th Street
>Scottsdale, AZ  85255

This 4th day of September, 2007.

JOHNSON LAW, P.C.

**s/ Cynthia Noles Johnson, Esq.**

313 Wolfe Street  GA State Bar No. 545615
P. O. Box 48  Attorney for Plaintiffs
Cohutta, GA  30710
(706) 694-4298
E-mail: cindy@johnsonlawpc.com