IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| DAVID R. WILSON and CHARLENE WILSON, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action |
| v. | ) ) | File No. 4:06-CV-179-HLM |
| TASER INTERNATIONAL, INC., | ) ) | |
| Defendant. | ) ) | |

**REPLY BRIEF IN SUPPORT OF TASER'S
MOTION TO STRIKE THE AFFIDAVIT OF PAMELA SCHREINER**

**I.   BACKGROUND**

In TASER International Inc.'s ("TASER") Motion for Summary Judgment, TASER argues that Plaintiffs' claims against TASER must fail because, among other reasons, there is no evidence in the record (much less "clear and convincing evidence") that TASER had knowledge prior to September 7, 2004, that its devices caused spinal compression fractures, nor is there any evidence in the record of the type of culpable conduct on the part of TASER that would entitle Plaintiffs to an award of punitive damages.  In an attempt to avoid summary judgment on these issues, Plaintiffs responded with the Affidavit of Pamela Schreiner, containing the fanciful accusations of a disgruntled former TASER employee.

Plaintiffs' opposition to TASER's Motion to Strike this sham affidavit is based almost entirely upon the fact that spreadsheet created by Schreiner at the request of TASER's general was not produced to plaintiff in the *Powers v. TASER* litigation. [Plaintiffs' Brief, pp. 7, 10-11]. While it is true that this work product document was not produced in that case, this fact is of little importance. The documents actually at issue in Schreiner's affidavit are the volunteer exposure reports, or demo reports, which Schreiner alleges in her affidavit contained "hundreds, if not thousands of injuries," and further alleges were destroyed by TASER in order to hide the contents of the reports. [Schreiner Aff. ¶ 5]. However, contrary to her affidavit, Schreiner never testified about this document destruction during her deposition, and in fact testified that these demo reports were actually produced in the *Powers* case.

During her deposition, Schreiner testified that at two separate times in 2004, she gathered documents, saved these documents to CDs, and forwarded them to TASER's outside counsel for production to plaintiff's counsel in the *Powers* litigation. Included in the first set of documents were demo reports that TASER received from law enforcement agencies following TASER training classes, as well as demo reports that had been submitted to TASER online. [Schreiner depo.

57:14-59:5]. These documents were produced to Powers' attorneys on CD in May 2004. [Schreiner depo. 74:24-75:9].

Following the May 2004 production, Schreiner located additional demo reports in various locations at TASER's office complex. [Schreiner depo. 75:10-76:19]. As with the previous collection of demo reports, Schreiner had the new collection scanned to CD and forwarded the documents to TASER's outside counsel for production to Powers' attorneys. [Schreiner depo. 87:14-25].

Therefore, the very same demo reports that Schreiner says she scoured the offices to locate, and that she asserts in her affidavit were shredded by TASER's CEO and General Counsel, were in fact produced in the *Powers* litigation in 2004. [Schreiner depo. 75:10-76:19; 87:14-25]. At no point in her deposition does Schreiner suggest that TASER executives were "visibly concerned and upset" about the information contained within the demo reports she located, nor does she suggest that anyone destroyed any of these documents before they were produced. In fact, Schreiner testified that *all* of the documents she gathered responsive to Powers' discovery requests were produced in that case:

> Q. And did you in fact gather all the documents that they had given you and then produce them to Renaud Cook for production in this case?
>
> A. Anything that I was able to obtain, yes.

> Q. Okay. You didn't withhold anything or nobody told you inside Taser not to produce anything?
>
> A. Not to my recollection.

[Schreiner depo. 104:6-12].

## II. SCHREINER DOES NOT FIT WITHIN EXCEPTION TO THE SHAM AFFIDAVIT RULE

Plaintiffs argue that Schreiner's affidavit should not be scrutinized as a sham affidavit because she is a "disinterested witness," suggesting that Schreiner should be viewed as a person who has no bias against TASER. However, Schreiner resigned from TASER in early 2005, after being accused of providing false information during a corporate investigation. [Schreiner depo. 14:20-21]. She testified that she became "very upset" and "emotional" when it became clear that she would no longer be working with the company. [Schreiner depo. 21:18]. Where, as here, a disgruntled former employee is brought in to provide testimony against her former employer, it is proper to conclude that the witness will be neither objective nor disinterested. While the issue of a disgruntled former employee as a supposed "disinterested witness" is not addressed in any of the cases cited by Plaintiffs, there is support in analogous situations for disregarding such testimony. *See e.g., Joy v. Hay Group, Inc.*, 403 F.3d 875, 878 (7th Cir. 2005) (upholding summary judgment in a contract action, disregarding testimony of "disgruntled former employees" where "objective" testimony was called for on

issue of contract interpretation).  Furthermore, Plaintiffs' assertion that supposedly disinterested witnesses are immune from the sham affidavit rule is incorrect.  *See Vanlandingham v. Ford Motor Co.*, 99 F.R.D. 1 (N.D. Ga. 1983) (affidavit of unrelated and apparently unbiased eyewitness disregarded when it was "inherently and blatantly inconsistent with her prior deposition").  Therefore, the Court certainly retains the discretion to classify Schreiner's affidavit as a sham affidavit, even if she is supposedly a disinterested witness.

### III.  SCHREINER'S AFFIDAVIT IS BLATANTLY INCONSISTENT WITH HER PRIOR DEPOSITION TESTMONY

Schreiner's affidavit contradicts her prior deposition testimony and contains additional information that, if true, should have been raised during the deposition. *See Mack v. Augusta-Richmond County, Ga.*, 365 F. Supp. 2d 1362, 1372 (S.D. Ga. 2005) (disregarding affidavit that, while not in direct conflict with his previous deposition testimony, asserted facts which should have been testified to given the scope of the questioning).  As set forth above, Schreiner testified at length about her efforts to gather documents and information for production in the *Powers* litigation, including scouring the TASER offices for demo reports.  [Schreiner depo. 75:10-76:19].  She also testified that she only saw a "handful" of various injuries noted on these demo reports.  [Schreiner depo. 109:6-16].  At no point during her deposition did she testify that TASER executives shredded or otherwise

destroyed any of these demo reports, and in fact she testified that the demo reports were saved to CDs, which she provided to TASER's outside counsel to ultimately be produced in the *Powers* case. [Schreiner depo. 58:19-59:8; 75:10-76:19; 87:14-25].

In her affidavit, Schreiner states that she now remembers seeing "hundreds, if not thousands" of injuries noted on the demo reports. [Schreiner Aff. ¶5]. Plaintiffs would have the Court suspend common sense and conclude that this discrepancy is not a true contradiction, but are we really to believe that Schreiner was unable to distinguish between a "handful" of injuries and "thousands" of injuries when she provided her prior sworn testimony?

More importantly, Schreiner for the first time accuses TASER executives of shredding demo reports containing information about injuries. [Schreiner Aff. ¶ 5]. If this was in fact true, then Schreiner had ample opportunity to provide this information during her deposition, given the fact that the scope of the questioning covered the shredding of documents [Schreiner depo. 79:24-80:1], alleged efforts by TASER to withhold documents [Schreiner depo. 104:6-12], as well as alleged dishonest conduct by TASER [Schreiner depo. 95:12-96:1]. However, even when asked these questions, Schreiner never mentioned the document destruction set forth in her affidavit.

Plaintiffs argue that Schreiner was not given "free rein in her deposition to disclose any pertinent information," in part because TASER's attorney raised objections during the deposition. However, the objections at issue dealt only with privilege issues, where Schreiner was instructed not to answer certain questions about the work product spreadsheet she prepared at the request of TASER's General Counsel. [Schreiner depo. 55:3-22; 82:14-83:15; 88:1-89:8]. At no point was she ever kept from testifying about other issues surrounding her work at TASER, or anything she may have witnessed while working there.

## IV.   CONCLUSION

For the reasons set forth above, TASER renews its request that the Affidavit of Pamela Schreiner be disregarded as a sham affidavit. However, to the extent the Court is inclined to consider Schreiner's affidavit in conjunction with TASER's pending Motion for Summary Judgment, TASER has filed a motion asking the Court to stay its ruling on the Motion for Summary Judgment until such time as TASER has had an opportunity to depose this new witness, who was not disclosed by Plaintiffs until long after the expiration of the discovery period in this case.

Respectfully submitted this 21st day of September, 2007.

                                                WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

                                                By: /s/ Jessie C. Fontenot, Jr.
                                                      Joel G. Pieper
One Atlantic Center, Suite 3500      State Bar No. 578385
1201 West Peachtree Street           (404) 888-7435 direct dial
Atlanta, Georgia 30309
(404) 888-7490 fax                       Jessie C. Fontenot, Jr.
                                                      State Bar No. 267528
                                                      (404) 888-7423 direct dial

                                              **Attorneys for TASER International, Inc.**

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for TASER International, Inc. hereby certifies that the size and style of type used in the foregoing document is Times New Roman: 14 point.

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

By: /s/  Jessie C. Fontenot, Jr.
   Joel G. Pieper
   State Bar No. 578385
   (404) 888-7435 direct dial

One Atlantic Center, Suite 3500
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 888-7490 fax

   Jessie C. Fontenot, Jr.
   State Bar No. 267528
   (404) 888-7423 direct dial

**Attorneys for TASER International, Inc.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 21, 2007, a true and correct copy of the within and foregoing **BRIEF IN SUPPORT OF TASER'S MOTION TO STRIKE AFFIDAVIT OF PAMELA SCHREINER** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>Cynthia Noles Johnson, Esq.
>ATTORNEY FOR PLAINTIFFS
>Johnson Law, P.C.
>313 Wolfe Street
>P.O. Box 48
>Cohutta, GA 30710

This 21st day of September, 2007.

>/s/ Jessie C. Fontenot, Jr.
>Jessie C. Fontenot, Jr.
>State Bar No. 267528