IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| **DAVID R. WILSON and** | **:** | |
| **CHARLENE WILSON,** | **:** | |
| | **:** | |
| **Plaintiffs,** | **:** | **CIVIL ACTION** |
| **V.** | **:** | **FILE NO.  4:06-CV-179-HLM** |
| | **:** | |
| **TASER INTERNATIONAL, INC.,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

_____

## PLAINTIFFS' RESPONSE TO TASER INTERNATIONAL, INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT

Come now Plaintiffs, **DAVID R. WILSON and CHARLENE WILSON**, and file this Brief in Response to TASER International, Inc.'s Renewed Motion for Summary Judgment, showing to the Court the following:

## I.    BACKGROUND OF THE CASE

On September 7, 2004, Plaintiff David Wilson attended a TASER certification class as required for his employment as a Georgia State Patrol officer. [Wilson depo. (Dkt. No. 40), p. 54].   Wilson was shown a slide presentation designed to convince participants that no injuries had been incurred in training. [Dkt. No. 58-12].   Wilson was assured that he would be properly spotted and that he would not be injured. [Wilson depo. (Dkt. No. 40), pp. 64-67].

Wilson was held by three spotters and shot in the back with a TASER. [Wilson depo. (Dkt. No. 40), pp. 71-73]. Wilson described the exposure as "unbelievable . . . the pain was so bad I thought something had happened. I thought I was going to die . . ." [Wilson depo. (Dkt. No. 40), p. 73]. Wilson continued to experience intense pain following the TASER shock. [Wilson depo. (Dkt. No. 40), p. 75]. An ambulance was called within minutes of Wilson's exposure to the TASER, and Wilson was taken to the hospital emergency room in Forsyth, Georgia. [Wilson depo. (Dkt. No. 40), pp. 78, 79]. The EMT report from Wilson's transport to the hospital reflects that EMS responded to the training center class for major back pain following Wilson being shot with a stun gun. The EMT noted Wilson was sitting in a chair unable to stand up and described his pain as a 10 on a scale of 1 to 10. [Dkt. No. 58-9, p. 39]. Wilson arrived at the Monroe County Hospital Emergency Room at 11:45 a.m. in acute pain in the thoracic area of his back. [Dkt. No. 58-9, p. 33]. The nursing assessment form indicated Wilson's pain level at a 10 out of 10. [Dkt. No. 58-9, p. 36]. The ER physician noted muscle spasms and recommended admission for pain control. [Dkt. No. 58-9, p. 34]. Wilson declined to be admitted, was given prescriptions for narcotic pain medication, and was discharged with instructions to see his personal physician. [Dkt. No. 58-9, pp. 34-39].

The following day,  September 8, 2004, David Wilson arrived at Dr. Edward Meier's office in a wheelchair, unable to move. [Meier depo. (Dkt. No. 113), p. 95].   Dr. Meier obtained Mr. Wilson's medical records from Monroe County Hospital and noted that Mr. Wilson's pain was well out of proportion with the objective x-ray findings that he received from Monroe County Hospital. [Meier depo. (Dkt. No. 113), p. 95].  Dr. Meier took a history from Mr. Wilson, noting that he experienced severe pain upon being shot in the TASER training.   He continued to experience severe pain even after he was given two shots of Morphine and sent home on Percocets and muscle relaxers. [Meier depo. (Dkt. No. 113), p. 96].  Dr. Meier noted from his review of the medical records from Monroe County Hospital on the day of Wilson's exposure that Mr. Wilson was in such pain that the ER physician wanted him admitted for pain control, which according to Dr. Meier was "highly unusual." [Meier depo. (Dkt. No. 113), p. 97].

Dr. Meier examined Mr. Wilson, noting extensive spasms and pain. [Meier depo. (Dkt. No. 113), p. 98].  Dr. Meier observed that Mr. Wilson's spine had a loss of lordosis and excessive kyphosis – Wilson's "spine was straight with a lot of spasms and he was also hunched to one side." [Meier depo. (Dkt. No. 113), p. 98]. Dr. Meier had no reason to doubt that Mr. Wilson was exposed to a TASER on September 7, 2004, or that he was "basically faking the pain or the spasm by both objective findings and the notes of the ER, and that's why we kept him on

3

narcotics." [Meier depo. (Dkt. No. 113), p. 104-105].  Dr. Meier further opined that he had no reason to doubt that Mr. Wilson experienced a severe back injury on September 7, 2004. [Meier depo. (Dkt. No. 113), p. 105].

Prior to Wilson's injury, TASER International had multiple opportunities to discover that its products were causing injuries.  One of TASER's best customers was the Phoenix Police Department located within a few miles of the headquarters of TASER International.  In mid-February of 2003, the Phoenix Police Department experienced two TASER training injuries in one day. [Parra depo., p. 10].  The Department's Training Bureau Commander, Susan Parra, became aware of other injuries and asked for a list of injuries to be compiled and sent to her. [Parra depo., p. 13].  Parra discovered that on February 8, 2002, officer Willie Collins suffered an injury to her left lower molar. [Parra depo., p. 14; Exh. 2 to Parra depo.].  On the same date, another officer injured a spinal disc and his right leg. [Parra depo., p. 15; Exh. 2 to Parra depo.].  On February 23, 2002, an officer suffered an injury to his lower back. [Parra depo., p. 14; Exh. 2 to Parra depo.].  In 2003, the Department experienced eight other injuries, three of those to the shoulder. [Parra depo., p. 15; Exh. 2 to Parra depo.].  As a result of the number of injuries incurred during training, in March of 2003, the Phoenix Police Department discontinued its policy of allowing officers to be exposed to TASERs. [Parra depo., pp. 16-17; Harris depo., p. 10].  In 2003, TASER's employee, Jami LaChapelle, who was in

4

charge of scheduling trainings, learned from Lewis (Les) Fisher, a Phoenix Police Department trainer, that the Phoenix Police Department had stopped allowing its officers to be tased. [Dec. '07 LaChapelle depo., p. 16-17].

On February 8, 2002, Willie Collins, a Phoenix Police Department officer, attended a TASER training taught by Les Fisher, one of the instructors.  Collins was told that there was no risk from being hit by the TASER. [Collins depo., p. 8]. Like David Wilson, Collins was held up by spotters and shot in the back. [Collins depo., p. 9].  Again, like David Wilson, Collins experienced severe pain after the TASER deployment had ended. [Collins depo., p. 11].  As a result of the exposure, Collins fractured a molar on her left jaw and developed three types of bone infections, requiring extensive treatment. [Collins depo., pp. 11-12].  Like Wilson, Collins' pain finally required her to retire as she was unable to continue her work as a police officer. [Collins depo., p. 14].  Some time in 2002, Collins was at TASER International's headquarters in Phoenix and had a discussion with a manager at TASER International by the name of Clay Winn. [Collins depo., pp. 14-15].  Winn's reaction to learning about Collins' serious injury was indifference. [Collins depo., p. 15].  Winn took no notes about the injury Collins described to him, filled out no reports, and made no promises to follow up with anyone at TASER about Collins' injury. [Collins depo., pp. 15-16].

On February 7, 2003, Detective Michael Eckenroth with the Phoenix Police Department attended a training session on the TASER device. [Eckenroth depo., p. 9]. The class was taught by Les Fisher. Eckenroth was told that there should be no negative effects from being tased. [Eckenroth depo., p. 11]. Eckenroth was told to kneel and had a probe placed on his left calf and his right shoulder. [Eckenroth depo., p. 12]. After the exposure, Eckenroth was having a hard time breathing and a lot of pain in his body. [Eckenroth depo., p. 13]. Eckenroth, at the time of his deposition on December 5, 2007, was still suffering pain between his shoulder blades, which he has had continuously since the day of his exposure to the TASER device. [Eckenroth depo., pp. 15-17]. Eckenroth wakes up very sore every morning. [Eckenroth depo., p. 16]. Eckenroth, a 35-year old man, is in "absolute agony from any physical activity from beyond just walking." [Eckenroth depo., pp. 17-18]. Like David Wilson, Eckenroth had no back problems prior to his exposure. [Eckenroth depo., p. 17].

In 2004, DGG TASER was the exclusive distributor of TASER products in Florida and Georgia. [Sundberg depo., p. 9-10]. Russell Stender and Mitchell Gray were the owners of DGG TASER. [Sundberg depo., pp. 9-10]. On August 18, 2004, Russell Stender, from DGG TASER, sent an e-mail to Stacie Sundberg, TASER's Vice-President of Global Sales, informing her of a back injury to an officer during a training on June 22nd and 23rd, 2004. [Sundberg depo., pp. 7, 15;

Exh. 2 to Sundberg depo.].  Sundberg forwarded the e-mail to TASER's corporate counsel, Doug Klint, and Steve Tuttle, TASER's Vice-President of Communications. [Sundberg depo., p. 15].  No action was taken.

On October 28, 2003, Officer Jeffrey Burt, an officer with the Florida Department of Law Enforcement, attended a TASER training. [Burt depo., p. 42, *Exh. A* attached hereto].  Burt was given the impression that no injuries had been documented as far as law enforcement officers taking the training. [Burt depo. (*Exh. A*), p. 52].  Burt was told that, "once it is off, you are completely back to normal. Basically saying, you get zapped, the gun is off, you are back to normal, 100 percent." [Burt depo. (*Exh. A*), p. 65].  Like Wilson, Burt was held by spotters before being exposed in the back. [Burt depo. (*Exh. A*), p. 68].  After the exposure, Burt felt "like somebody stuck a knife in my back." [Burt depo. (*Exh. A*), p. 77].  Six weeks after the training, after experiencing continuing back pain, Burt finally went to a physician, who sent him to physical therapy. [Burt depo. (*Exh. A*), pp. 84-85].  On July 29, 2004, Officer Burt had an MRI scan, which showed two healed compression fractures. [Burt depo., (*Exh. A*), p. 90].

On January 16, 2004, John Jewett, a deputy with the Columbia County, Florida Sheriff's Office, attended a TASER training in Valdosta, Georgia. [Jewett depo., pp. 60-61, *Exh. B* attached hereto].  Mitchell Gray, owner of DGG TASER, was the instructor for the class. [Jewett depo. (*Exh. B*), p. 62].  Jewett was never

told that the TASER could cause serious injuries. [Jewett depo. (*Exh. B*), p. 67]. Jewett was exposed by having the wires taped to his left shoulder and to the back of his left hip. [Jewett depo. (*Exh. B*), p. 86]. Jewett was held in place by two other officers. [Jewett depo. (*Exh. B*), p. 93]. Like David Wilson, after the exposure ended, Jewett had trouble breathing and experienced severe pain. [Jewett depo. (*Exh. B*), pp. 94-98]. The pain continued to get worse until Jewett was taken to the hospital. [Jewett depo. (*Exh. B*), pp. 94-102]. After Jewett returned home, he continued to have severe pain. On January 18, 2004, Jewett went to the hospital, where he was diagnosed with two compression fractures in his spine. [Jewett depo. (*Exh. B*), pp. 110-111].

Despite Plaintiffs' specific requests to produce information concerning training injuries, TASER International produced little information, forcing Plaintiffs to go to great trouble and expense to obtain documents which should have been produced in discovery. Although TASER admitted to having received notice of a back injury to Samuel Powers, a Maricopa County, Arizona Sheriff's Deputy, TASER failed to produce documents concerning that injury, as well as injuries to other officers. [Dec. '07 Tuttle depo., pp. 7-23; Exhs. 2, 3 and 4 to Tuttle depo.]. In addition, TASER destroyed a stack of exposure reports documenting training injuries which occurred prior to Wilson's exposure. [Schreiner depo., p. 88].

TASER's SEC filings list lawsuits arising from numerous training injuries undisclosed by TASER in discovery in this case. [*Exh. C* attached hereto].   In January of 2005, TASER finally changed its warning to apprise law enforcement personnel participating in trainings of the true risks of exposure. [Dkt No. 58-13].

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   David Wilson Injured His Back As a Result of His Exposure to the TASER.

Although the Court has now excluded Dr. Meier's opinion as to the cause of Mr. Wilson's compression fractures, a jury issue remains as to whether Mr. Wilson's severe back pain immediately following and continuing after his exposure to the TASER was proximately caused by the Defendant's product.

"Whether proximate cause exists in a given case is a mixed question of law and fact. It requires both fact finding in the 'what happened' since, and an evaluation of whether the facts measure up to the legal standards set by precedent. Ordinarily, both determinations are most appropriately made by a jury upon appropriate instructions from a judge. [cite omitted]. The decision may be made by the trial judge or appellate court only if reasonable persons could not differ as to both irrelevant facts and the evaluative application of legal standards . . . to the facts." Atlanta Obstetrics & Gynecology Group v. Coleman, 260 Ga. 569, 570 (1990).

"What amounts to proximate cause 'is undeniably a jury question' (Ontario Sewing Mach. Co. v. Smith, 275 Ga. 683, (2) (572 S.E.2d 533) (2002); McAuley v. Wills, 251 Ga. 3, 7 (303 S.E.2d 258 (1983)), and 'is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent.'" Zwiren v. Thompson, 476 Ga. 498, 500 (2003), *citing* Atlanta Obstetrics & Gynecology Group v. Coleman, supra.

David Wilson experienced immediate, excruciating pain from the time of his exposure and for months afterwards.  Dr. Meier saw him the day following his exposure, obtained and reviewed the medical records from the Monroe County Hospital, including the ambulance and EMT records, nursing assessment, and physician report, examined Mr. Wilson and found objective evidence of severe back pain.  Although Dr. Meier may be precluded from testifying concerning the biomechanical cause of Mr. Wilson's compression fractures, there is no reason that Dr. Meier should be precluded from testifying concerning evidence of a severe back injury.

Georgia courts have traditionally deferred to jury determination on the question of proximate causation. For example, in Holley v. Smallwood, 174 Ga. App. 365 (1985), the plaintiff was involved in a collision with a truck and was treated at a hospital emergency room and released.  Three weeks after the collision, the plaintiff experienced seizures, which continued for a year and a half.  A tumor

10

was discovered, which was removed, and the seizures ended.  The plaintiff alleged that the collision caused trauma to his head, resulting in the epileptic seizures and depression.  The Georgia Court of Appeals reversed the trial court's order granting summary judgment to the defendant, finding sufficient evidence of proximate cause from the plaintiff's expert testimony that it was likely that the trauma aggravated a pre-existing condition to some degree. Supra at 366.

In Killingsworth v. Poon, 167 Ga. App. 653 (1983), the Georgia Court of Appeals reversed the grant of summary judgment in favor of a physician in a medical malpractice case, finding that the physician's denial of causation was controverted by the plaintiff's expert, who stated that the only apparent cause of plaintiff's punctured lung was the injections she had received from the defendant. Supra at 657.  Similarly, here, if one accepts Mr. Wilson's version of events, the medical specialists at the hospital who saw Wilson immediately following his exposure, and Dr. Meier's objective findings,  the only reasonable conclusion  that can be reached is that the exposure to the TASER caused Wilson's painful injury.

In Orkin Exterminating Co. v. Carder, 258 Ga. App. 796 (2002), the plaintiff sued the exterminating company for personal injuries sustained as a result of exposure to pesticides applied at his work.  The plaintiff's expert was allowed to opine that based upon a "challenge test" to determine whether the plaintiff was exposed to pesticides, as well as the exclusion of other causes and the temporal

relationship between the onset of the plaintiff's symptoms and his exposure to the pesticides at his workplace, plaintiff had experienced an idiosyncratic sensitivity to the defendant's pesticides. Supra at 798.

Given the close temporal relationship between David Wilson's exposure to the TASER and the onset of his symptoms, the objective evidence of severe muscle spasms and pain, and the lack of any other reasonable cause, sufficient evidence exists to create a question of whether David Wilson suffered a severe injury as a result of his exposure to the Defendant's product.

**B.     Evidence of Numerous Similar Injuries May Be Used to Establish Causation.**

Evidence of other training injuries which were incurred under similar circumstances is admissible to establish causation. Borden, Inc. v. Florida East Coast Railroad Co., 772 F.2d 750, 754 (11th Cir. 1985).  Plaintiffs have submitted evidence of severe injuries suffered by many other officers who were spotted and not allowed to fall, but who, nonetheless, suffered injury (Eckenroth, Collins, Burt, Jewett, Allen, Powers, and Kramer).  The fact that other people suffered injuries similar to Plaintiff David Wilson under similar circumstances further supports Plaintiffs' proof of causation.

**C.     Defendant's Failure to Warn Was the Proximate Cause of David Wilson's Injury.**

David Wilson was told, and was led to believe, that after cessation of the electrical current he would be back to normal. Defendant, TASER International, had ample reason to know that that was not necessarily true.  Had TASER International warned of the many injuries experienced by officers prior to Wilson's exposure, David Wilson could have made an informed decision of whether to undertake the risk.

TASER had a duty to warn law enforcement officers considering exposure to the danger from the use of its product. Hunter v. Werner Co., 258 Ga. App. 379, 384 (2002).  For over two years prior to Wilson's injury, TASER had knowledge that officers were being repeatedly injured in training, but continued to provide false assurances that its product was safe.  Had Wilson been told of the true risk of injury, he would have declined the exposure.

## III.     CONCLUSION

For the foregoing reasons, TASER International's Renewed Motion for Summary Judgment should be denied.

Respectfully submitted this 2nd day of June, 2008.

JOHNSON LAW, P.C.

**s/ Cynthia Noles Johnson, Esq.**
GA State Bar No. 545615
Attorney for Plaintiffs

13

313 Wolfe Street
P. O. Box 48
Cohutta, GA  30710
(706) 694-4298
E-mail: cindy@johnsonlawpc.com

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel for Plaintiffs hereby certifies that the foregoing

Brief has been prepared using Times New Roman 14 point.

JOHNSON LAW, P.C.

**s/ Cynthia Noles Johnson, Esq.**

313 Wolfe Street                    GA State Bar No. 545615
P. O. Box 48                          Attorney for Plaintiffs
Cohutta, GA  30710
(706) 694-4298
E-mail: cindy@johnsonlawpc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2008, I electronically filed **Plaintiffs'**
**Response to TASER International, Inc.'s Renewed Motion for Summary**
**Judgment** with the Clerk of Court using the CM/ECF System which will
automatically send e-mail notification of such filing to the following attorneys of
record:

> Joel G. Pieper, Esq.
> Jessie C. Fontenot, Jr., Esq.
> Womble, Carlyle, Sandridge & Rice, PLLC
> One Atlantic Center, Suite 3500
> 1201 West Peachtree Street
> Atlanta, GA  30309
>
> Holly L. Gibeaut
> TASER International, Inc.
> 17800 North 85th Street
> Scottsdale, AZ  85255
>
> Michael A. Brave
> 3209 South Pointe Court
> Eau Claire, WI  54701

This 2nd day of June, 2008.

JOHNSON LAW, P.C.

**s/ Cynthia Noles Johnson, Esq.**

313 Wolfe Street                    GA State Bar No. 545615
P. O. Box 48                        Attorney for Plaintiffs
Cohutta, GA  30710
(706) 694-4298
E-mail: cindy@johnsonlawpc.com